# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Linh H.V.,

        Petitioner,

v.

Markwayne Mullin, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

        Respondents.

Civ. No. 26-2090 (JWB/SGE)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

Daniel P. Suitor, Esq., Daniel P. Suitor, PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Worthington Phillips, Esq., United States Attorney's Office, counsel for Respondents.

Petitioner Linh H.V. seeks a writ of habeas corpus under 28 U.S.C. § 2241 and challenges his re-detention after he was released from immigration custody on an Order of Supervision ("OSUP") over 20 years ago. Petitioner contends that Respondents failed to comply with mandatory procedures that govern when and how a previously released noncitizen may be re-detained.

Petitioner does not challenge his removal order or the decision to commence removal proceedings. He challenges only the lawfulness of his re-detention in light of the statutory and regulatory limits that govern the Department of Homeland Security's ("DHS") detention authority. The petition therefore challenges the lawfulness of

custody—not removability—and falls within this Court's jurisdiction under 28 U.S.C. § 2241.

Habeas corpus is, at bottom, a remedy for unlawful detention. Because Respondents failed to satisfy the regulatory requirements authorizing re-detention, the Petition is granted to the extent it seeks Petitioner's release.

## BACKGROUND

Petitioner is a citizen of Vietnam who came to the United States as a refugee in the 1980s. (Doc. No. 1, Petition ¶¶ 1, 17; Doc. No. 6, Campbell Decl. ¶¶ 4–5; Doc. No. 6-1 at 2.) He became a lawful permanent resident in 1991, but he was eventually ordered removed from the country on August 29, 2002, after a series of criminal convictions. (Petition ¶¶ 2, 17, 27–28; Campbell Decl. ¶¶ 6–11; Doc. No. 6-1 at 2–3; Doc. No. 6-4.)

Because Vietnam has historically refused to accept deportees, Immigration and Customs Enforcement ("ICE") released Petitioner on an Order of Supervision ("OSUP") on March 17, 2003. (Petition ¶¶ 2–3, 28; Campbell Decl. ¶ 12; Doc. No. 6-2 at 1.)

Petitioner has since incurred additional criminal convictions. (Petition ¶ 27 (listing offenses from 2006 to 2025); Campbell Decl. ¶ 7.) Respondents state that Petitioner also failed to appear for multiple check-ins with ICE as required by his OSUP. (Campbell Decl. ¶¶ 13, 15–18, 20–22.)

On January 4, 2026, ICE agents arrested Petitioner at his home in Minneapolis. (Petition ¶¶ 7, 17, 30; Campbell Decl. ¶ 22.) Respondents state the arrest was based on information that a travel document from Vietnam was likely and on alleged violations of the OSUP. (Campbell Decl. ¶ 22.) Petitioner alleges that he was not presented with a

warrant or any documentation at the time of arrest, including any notice revoking his release or identifying a basis for re-detention. (Petition ¶¶ 7–8.)

On January 7, 2026—three days after the arrest—Respondents served Petitioner with a Notice of Revocation of Release. (Doc. No. 6-2.) The Notice states that "your case has been reviewed" and that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." (*Id.* at 1.) It further asserts that "changed circumstances" justify re-detention. (*Id.*) The Notice does not identify any specific facts supporting that conclusion. It does not reference any OSUP violations or any travel document from Vietnam.

Respondents conducted an informal interview the same day. (Campbell Decl. ¶ 23; Doc. No. 6-3.) The interview record reflects that Petitioner stated he had been living in the United States for 15 years, owned his home, required medication, and saw no reason for his detention. (Doc. No. 6-3.)

Respondents did not request a travel document from Vietnam until February 14, 2026, more than a month after Petitioner's arrest. (Campbell Decl. ¶ 24.) That request remains pending. (*Id.*) Respondents state that removal will be scheduled if and when a travel document is issued. (*See id.* ¶ 25.)

Petitioner remains detained at the Sherburne County Jail in Elk River, Minnesota. (Petition ¶¶ 12, 17; Campbell Decl. ¶ 22.)

## DISCUSSION

### I.    Legal Standard

Habeas corpus provides a mechanism for a person in custody to challenge the

lawfulness of detention under the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

The question here is whether Petitioner's detention is lawful on this record. Even where detention is authorized in general, it must comply with the limits imposed by statute, regulation, and the Constitution. Petitioner bears the burden of establishing unlawful detention by a preponderance of the evidence. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

## II.    Analysis

### A.    The Government's Authority to Re-Detain a Noncitizen Released under 8 C.F.R. § 241.13.

Even where the government has authority to detain a noncitizen subject to a final order of removal, that authority is not unlimited. It is constrained by both statute and the Constitution. Detention beyond the removal period is lawful only so long as removal is significantly likely to occur in the reasonably foreseeable future. *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001). When removal is not reasonably foreseeable, continued detention is not authorized, and release under supervision is required. *Id.* at 699.

8 C.F.R. §§ 241.4 and 241.13 govern post-removal order custody determinations. These regulations are the mechanism by which the government implements the constitutional limits recognized in *Zadvydas*. Under 8 C.F.R. § 241.13, ICE must release a noncitizen where removal is not reasonably foreseeable and no special circumstances justify continued detention.

Once a noncitizen has been released under § 241.13, ICE may revoke that release only upon a demonstrated violation of supervision conditions or upon changed

circumstances establishing a significant likelihood of removal in the reasonably foreseeable future. *Id.* § 241.13(i). ICE bears the burden of establishing that such circumstances exist. *See, e.g.*, *Francis B. v. Crow Wing Cnty. Jail*, Civ. No. 26-1132 (JMB/DLM), 2026 WL 562726, at *2 (D. Minn. February 28, 2026). That burden is not satisfied by conclusory assertions or generalized statements regarding removal efforts. *See id.* at *2–3; *Faysal N. v. Noem*, Civ. No. 25-4641 (JMB/DLM), 2026 WL 36066, at *4 (D. Minn. Jan. 6, 2026).

Whether release is being revoked for violating release conditions or due to changed circumstances, ICE must notify the noncitizen "of the reasons for revocation of his or her release." *Id.* § 241.13(i)(3). ICE must also conduct an initial informal interview designed to allow the noncitizen to respond to those stated reasons. *Id.* To give a meaningful response, the noncitizen must be informed of the facts supporting the determination to revoke release.

These requirements are not discretionary. The government is bound to follow the regulations it has promulgated. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (holding that an agency is required to adhere to its own regulations). Failure to do so results in an unlawful detention.

### B. Respondents Failed to Notify or Establish an OSUP Violation, Changed Circumstances, or a Significant Likelihood of Removal

Re-detention may be justified by either a violation of supervision conditions or by changed circumstances demonstrating that removal is now significantly likely to occur in

the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1)–(2).[1] Respondents invoke both theories here.

But Petitioner's Notice of Revocation does not. It states only that "changed circumstances" exist and that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." (Doc. No. 6-2 at 1.) It repeats that conclusion in identical terms. (*Id.*) It says nothing about OSUP violations.

The timing underscores the problem. Petitioner was arrested on January 4, 2026. Respondents served him with the Notice on January 7, 2026, three days later. (Doc. No. 6-2 at 2.) At that time, Respondents' reason for detaining Petitioner was that "removal from the U.S. is now significantly likely in the reasonably foreseeable future." (*Id.* at 1.) But Respondents had not begun the process of obtaining a travel document for Petitioner. They did not request one until February 14, 2026—more than a month after the arrest—and the request remains pending. Respondents cannot detain first and supply justification later. See *Vang v. Bondi*, Civ. No. 26-1381 (JMG/LDM), Doc. No. 10 at 4 (D. Minn. Feb. 18, 2026) ("The government detained the petitioner first, and asked questions later. That's not how this works.").

Respondents also now point to alleged OSUP violations. But those violations were

---

[1]     Respondents rely on 8 U.S.C. § 1231(h) to argue that Petitioner cannot try to raise a procedural challenge. (Doc. No. 7 at 14.) Section 1231(h) does not create procedural rights. But that does not mean a noncitizen cannot challenge unauthorized detention under 28 U.S.C. § 2241, as Petitioner does here. *Zadvydas*, 533 U.S. at 687–88. Respondents' argument that Petitioner's challenge is premature (Doc. No. 7 at 10) also fails for similar reasons; Petitioner is challenging the method by which he was re-detained, not the length of time he has spent in custody.

not identified in the Notice. 8 C.F.R. § 241.13(i)(3) requires notice of the reasons for revocation. That requirement is not satisfied by later argument in litigation.

Nor does the Notice satisfy the requirement for meaningful notice. Providing notice under § 241.13(i)(3) requires more than merely parroting the regulatory language that circumstances have changed. *See Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 781 (D. Minn. 2025). Respondents must provide specific, individualized facts supporting their conclusion that removal is now significantly likely. *Id.* at 783–84 (listing cases). This Notice does not identify what changed, why removal is now likely, or how removal would be accomplished. *See Liban O. v. Bondi*, Civ. No. 25-4560 (JWB/ECW), Doc. No. 10 at 7; *Yee S. v. Bondi*, 806 F. Supp. 3d 894, 901 (D. Minn. 2025). Prior to or at the moment of arrest, Respondents failed to establish a significant likelihood of removal in the reasonably foreseeable future.

The inadequate notice also undermines the required informal interview. The purpose of that interview is to allow the noncitizen to respond to the stated reasons for revocation. 8 C.F.R. § 241.13(i)(3). Without meaningful notice, there can be nothing to meaningfully respond to. Petitioner cannot rebut unspecified "changed circumstances" or unidentified violations. The record reflects that he gave only a general response to detention, not a response to any articulated basis for revocation. On this record, the interview did not satisfy the regulation. *See Sarail A.*, 803 F. Supp. 3d at 784 ("Because ICE provided insufficient Notice, it failed to comply with the subsequent procedural requirements as well.").

These are not technical defects. The notice and interview requirements are the

mechanism by which the government establishes that re-detention is justified. When those requirements are not followed, continued detention is not authorized. *See Accardi*, 347 U.S. at 268. On this record, those failures are dispositive. *See, e.g.*, *Sarail A.*, 803 F. Supp. 3d at 784; *Vang*, Civ. No. 26-1381, Doc. No. 10 at 4–7.

### III.    Relief

Because Respondents failed to comply with the requirements governing re-detention under § 241.13, Petitioner's continued detention is unlawful. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention"). Therefore, Petitioner is entitled to immediate release subject to the conditions of his existing Order of Supervision.

Petitioner also alleges that his re-detention occurred as part of a broader pattern of targeting Southeast Asian noncitizens. (*See* Petition ¶¶ 8, 10, 25.) Respondents state that they targeted Petitioner because of his criminal history and information ICE had received about travel documents from Vietnam. (Campbell Decl. ¶ 22.) This claim is not resolved here. This disposition rests on Respondents' failure to comply with the substantive and procedural requirements governing re-detention under § 241.13. Consequently, no determination is required as to motive, intent, or the constitutional claims asserted.

This Order does not preclude future custody decisions made in compliance with governing law.

#### ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.      Petitioner Linh H.V.'s Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

2.      **Release**. Respondents shall immediately release Petitioner from custody. He must be released in Minnesota subject to any conditions of his existing Order of Supervision. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiation of return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3.      **Notice.** Respondents shall file an update on the status of Petitioner's release by 2:45 p.m. on April 8, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4.      Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

5.      Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: April 6, 2026                     *s/ Jerry W. Blackwell*
Time: 2:45 p.m.                         JERRY W. BLACKWELL
                                        United States District Judge

10